1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**OPP**
DALE K. KLEVEN, ESQ.
Nevada Bar No.  007778
HOMEOWNER RELIEF LAWYERS LLC
5550 Painted Mirage Rd., Suite 320
Las Vegas, Nevada 89149
Phone: 702-589-7520
Fax: 702-946-1350
Email: admin@hrlnv.com
*Attorney for Plaintiffs*

**UNITED STATED DISTRICT COURT**

**DISTRICT OF NEVADA**

DEAN MILLS, an Individual; GLENDA MILLS, an Individual,

            Plaintiffs,

vs.

BANK OF AMERICA N.A., a National Association; NATIONSTAR MORTGAGE LLC, a Delaware Limited Liability Company; OLD REPUBLIC INSURANCE COMPANY, a Pennsylvania Corporation; DOES I through X; and ROE corporations or Companies I through X,

            Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.  2:13-CV-02203-MMD-CWH

**PLAINTIFFS' OPPOSITION TO BANK OF AMERICA'S MOTION TO DISMISS, AND PLAINTIFFS' COUNTERMOTION FOR PARTIAL SUMMARY JUDGMENT, AND FOR LEAVE TO AMEND THE COMPLAINT TO ADD A CAUSE OF ACTION FOR EQUITABLE ESTOPPEL**

      COME NOW, Plaintiffs Dean Mills and Glenda Mills, by and through Dale K. Kleven, Esq., of Homeowner Relief Lawyers LLC, pursuant to FRCP 12(d) and FRCP 56, and hereby oppose Defendant Bank of American NA's Motion to Dismiss, and Countermoves for Partial Summary Judgment on Plaintiffs' cause of action for declaratory relief, in that plaintiffs are entitled to a declaratory judgment under the Uniform Declaratory Judgments Act, NRS 30.010 et seq., finding that a valid and binding tri-partite agreement exists between plaintiffs, defendants, and potential buyer, to short sale the property for $190,000, with a full waiver and release of the first and second mortgages, without a seller contribution; and to amend the complaint to add an action for equitable estoppel.

**POINTS AND AUTHORITIES**

**A.     Facts**[1]

1.      On or about November 21, 2003, the plaintiffs purchased 3737 W. La Madre Way, North Las Vegas, Nevada 89031 (APN: 124-31-801-008) (herein called "the property"), secured by a first and a second note/mortgage and deed of trust, both held by defendant, Bank of America (herein after "BofA").

2.      In 2010, Plaintiffs fell on hard times financially and personally after Mr. Mills was injured while working as a police officer for the Las Vegas Metropolitan Police Department.  This resulted in Plaintiff being out of work for about 10 weeks.

3.      Plaintiffs sought help and mortgage relief from defendant, BofA and were told by defendant, BofA that he could try a loan modification.

4.      Even though Plaintiffs fully complied with all the terms and payments of the loan modification, defendant BofA informed Plaintiffs that they had not complied with the terms, and that the modification was denied.  Plaintiffs were shocked and asked BofA for a detailed explanation, but none was given.  The payments were tacked onto the back of the mortgage loan and the Plaintiffs were put in a worse position than before.

5.      In 2012, Mr. Mills was involved in another accident.  This time it was an auto accident while working as a police officer with Las Vegas Metro, resulting in him suffering injuries that made him permanently disabled.

6.      The Mr. Mill's disabilities led to further inability to maintain the mortgage, as well as an inability to fix, repair, and maintain the home.  As a result, the home fell further into disrepair.

7.      Upon information and belief, Defendant, BofA knew of Mr. Mill's disabilities and hardships, and it appeared that BofA intentionally used those hardships and disabilities against the Plaintiffs.

8.      On or about November 27, 2012, Plaintiffs hired the law firm of Homeowner Relief

---

[1]See Affidavit of Plaintiff, Dean Mills attached as **Exhibit 3**.

2

Lawyers LLC to represent him on negotiating a short sale with defendant BofA.

9.   After reviewing the condition of the home, the financial condition of the Plaintiffs, and the real estate market, the home was listed for sale with a real estate agent (Kameron Kaldea) in late April 2013, for the list price of $199,900.

10.  On May 7, 2013, an offer was made by a potential buyer (investor) for the sum of $160,000. See, Screenshot for Equator's History of Offers, attached as **Exhibit 1**.

11.  The offer was submitted by Plaintiffs' real estate agent to BofA in writing through BofA's on-line communication program called "Equator", for BofA's approval (Defendant BofA requires the use of Equator for all short sale offers).

12.  The offer was rejected by BofA and a counteroffer of $210,200 was made by mitigator D. Maga, who was an authorized employee and agent of BofA.  This counteroffer was made and submitted in writing through BofA's on-line Equator system. See **Exhibit 1**.

13.  BofA's counteroffer was rejected by the potential buyer (investor), and on May 23, 2013 another detailed offer of $190,000 with no contingencies was made by the potential investor/ buyer and submitted to BofA in writing through the Equator on-line system.  See, **Exhibit 1**.

14.  On June 4, 2013 the investor/buyer's no contingency $190,000 offer was accepted by BofA by way of a written acceptance which BofA called a "counteroffer", but which mirrored the investor's offer, and which was sent the Equator on-line system.

15.  It is important to note that the May 23, 2013 offer and the June 4, 2013 acceptance/counteroffer *included a full waiver and release of the Plaintiffs for any and all deficiencies for the first and the second mortgages*.

16.  Defendant BofA's June 4, 2013 acceptance/counteroffer did not leave out any essential terms and contained detailed and specified terms.

17.  On June 4, 2013 BofA's detailed acceptance/counteroffer for $190,000 and contingencies, was accepted in writing by the buyer and the sellers through BofA's Equator system. See **Exhibit 1**.

18.  The agreed upon terms included a full waiver and release of the Plaintiffs as intended third

party beneficiaries, for any and all deficiencies for the first and the second mortgages.

19. Accordingly, as of June 4, 2013, the parties reached a meeting of the minds as to the essential terms, and the terms were confirmed to in writing, and electronically signed via email/Equator (Said signatures are valid and binding pursuant to the Electronic Signatures in Global and International Commerce Act of 2000 (ESGICA)).

20. The Plaintiffs and the buyer both relied on the written agreement, suffered detriment, and proceeded with taking steps to finalize the sale.

21. On June 7, 2013 (even though there was a valid and binding agreement in place), mitigator D. Baird from BofA thought it was fine to ignore the agreement already in place for $190,000, and, he made another "counteroffer" for the sum of $273,000.

22. This rogue counteroffer was summarily rejected by the buyer and on June 10, 2013 was countered with the same $190,000 offer originally made by BofA and accepted by the buyer three days earlier.

23. On July 11, 2013, mitigator N. Valencia confirmed in writing that the $190,000 offer was acceptable and asked for written confirmation from the buyer that they had a deal at the sale price of $190,000, including a full waiver and release of any and all deficiencies for the first and the second mortgages. See, Email and details of offer from Ms. Valencia attached as **Exhibit 2**.

24. On July 11, 2013 the $190,000 sale price was again confirmed/accepted by the buyer and the sellers, and a SECOND meeting of the minds was reached, supported by writing and electronically signed by the parties.

25. As the court can see from looking at **Exhibit 2**, the offer and acceptance included all the necessary and essential terms needed for a full meeting of the minds to form a valid and enforceable contract.  To wit:

    a.     Property Address
    b.     Listing Agent
    c.     Listing Date
    d.     Listing Amount
    e.     Proposed Sale price
    f.     Potential Buyer Name
    g.     Lender

h.   Buyer Agent
i.   Real Estate Commission Percentage
j.   Commission Amount
k.   Earnest Money Amount
l.   Down Payment Percentage
m.   Down Payment Amount
n.   Loan Amount
o.   Settlement Fee
p.   Title Insurance
q.   Transfer Taxes
r.   HOA Transfer Fee
s.   Buyer Closing Costs
t.   2nd Lien Release Amount
u.   Misc. Settlement and Closing Costs
v.   Close of Escrow Date

26.   The Plaintiffs and the investor/ buyer both relied on the second written agreement and again proceeded with finalizing the sale.

27.   Unknown to plaintiffs, defendant BofA made a claim on the second mortgage with its insurance company, defendant Old Republic Insurance and was paid out on the claim. Apparently the second mortgage was assigned to Old Republic Insurance when the claim was paid.

28.   On or about July 18, 2013, BofA sold the second mortgage to Defendant, Nationstar.  See Defendant BofA's **Exhibit E** to its Motion to Dismiss (which defendant claims is proof of assignment of Deed of Trust to Old Republic, but is not).

29.   During this whole time, defendant BofA was negotiating with plaintiffs' agents regarding the short sale, and including the second mortgage in the negotiations.

30.   Plaintiffs were under the belief that the second mortgage was owned by BofA, and/or that BofA had the authority to negotiate the resolution of the second mortgage.

31.   On August 22, 2013 (even though BofA had now sold or assigned the same second mortgage to two different companies, and had an agreement with the potential investor/ buyer which included a full release of both the first and second mortgages) BofA ignored the twice-confirmed agreed upon sale price of $190,000, ignored the full waiver of deficiencies, and made yet another rogue "counteroffer" of $210,000!  See, **Exhibit 1**.

32.   The Buyer rejected this "counteroffer" and reminded BofA that the agreement was for $190,000.

33. Plaintiffs have contacted defendant Old Republic and defendant Nationstar regarding the second mortgage they both purchased or were assigned from BofA.  They are in the process of trying to find out which one of them really "owns" the second mortgage.  But both of them have refused to release the second mortgage without a significant cash contribution of about $8,000, and neither are offering a waiver deficiency.

34. Upon information and belief, defendant BofA is intentionally trying to take advantage of plaintiff homeowners who are perceived by defendant BofA as being desperate and weak.

35. Upon information and belief, defendant BofA is intentionally trying to take advantage of one of its mortgage borrowers who is a permanently disabled police officer.

36. Defendant has intentionally ignored the tri-partite agreements entered into regarding  the $190,000 agreed upon purchase price and waiver and release of the first and second mortgage deficiencies, for the ulterior and bad-faith purpose of taking advantage of perceived increasing home values occurring after the agreement was reached.

**B.    Facts Not in Dispute, and Supporting Plaintiffs' Countermotion**

1. On May 23, 2013 a detailed offer was made by the buyer of the Property to purchase the Property for $190,000.

2. On June 4, 2013 the detailed offer was accepted by BofA by them presenting the identical offer, but it was called a "counteroffer".

3. On June 4, 2013, the detailed "counteroffer" was accepted by the investor/potential buyer and the plaintiffs, thereby creating a "meeting of the minds".

4. On June 7, 2013 BofA ignored the meeting of the minds, and made another "counteroffer" for $273,000.

5. On June 10, 2013 another detailed counter-offer was made by the investor/buyer of the Property to purchase the Property for $190,000.

6. On July 11, 2013 the detailed offer was again accepted by BofA by them presenting the identical offer, but it was called a "counteroffer".

7. On July 11, 2013, the detailed "counteroffer" was accepted by the investor/potential buyer and the plaintiffs, thereby creating a second "meeting of the minds".

8.    On July 17, 2013 BofA ignored the second meeting of the minds, and made yet another "counteroffer" for $265,000.

9.    All of the offers and counteroffers were detailed as to each and every "essential term" and included the following terms:

    a.    Property Address
    b.    Listing Agent Name
    c.    Listing Date
    d.    Listing Amount
    e.    Proposed Sale price
    f.    Potential Buyer Name
    g.    Lender's Name
    h.    Buyer Agent Name
    i.    Real Estate Commission Percentage
    j.    Commission Amount
    k.    Earnest Money Amount
    l.    Down Payment Percentage
    m.    Down Payment Amount
    n.    Loan Amount
    o.    Settlement Fee
    p.    Title Insurance
    q.    Transfer Taxes
    r.    HOA Transfer Fee
    s.    Buyer Closing Costs
    t.    2nd Lien Release Amount
    u.    Misc. Settlement and Closing Costs
    v.    Close of Escrow Date

**C.    Facts in Dispute or Unknown (FRCP 56(d))**

1.    Did BofA have the authority and right to agree to short sale the property for $190,000 and to grant a full deficiency waiver and release on June 4, 2013?

2.    Did BofA have the authority and right to agree to short sale the property for $190,000 and to grant a full deficiency waiver and release on July 11, 2013?

3.    Was the second mortgage still owned by BofA when it agreed to sell the property and release the second mortgage?

4.    When did BofA assign the rights to the second mortgage to Old Republic?

5.    Who is the true owner of the second mortgage?

6.    Did BofA act in good faith when it made multiple offers which included a release of the second mortgage, AFTER the second mortgage was allegedly sold or assigned to Nationstar or Old Republic?

# LAW AND ARGUMENTS

### A.    Standard of Review for Dismissal/Summary Judgment

Rule 12 of the Federal Rules of Civil Procedure governs a motion to dismiss, and subpart (d) explains that motions to dismiss which include documents outside the pleadings, should be treated as a motion for summary judgment.  FRCP 12(d) provides in pertinent part as follows:

> (d) Result of Presenting Matters Outside the Pleadings. If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

FRCP 12(d)

FRCP 56 provides for the standards and rules regarding summary judgment.  Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Galen v. Cnty. of L.A., 477 F.3d 652, 658 (9th Cir.2007). The moving party bears the initial burden of showing there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law. Celotex, 477 U.S. at 323, 106 S.Ct. 2548. If the moving party meets his or her burden, then the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial" in order to withstand summary judgment. Galen, 477 F.3d at 658. Here, cross-motions for summary judgment are at issue. The court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." ACLU of Nev. v. City of Las Vegas, 466 F.3d 784, 790-91 (9th Cir.2006) (citations omitted); see also Friends of Columbia Gorge, Inc. v. Schafer, 624 F.Supp.2d 1253, 1263 (D.Or.2008).

Under FRCP(d), "if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer

considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

Here, there is clearly issues in dispute regarding the authority and reasonableness of the actions of the parties.  (See Affidavit of Plaintiff, Dean Mills, attached as **Exhibit 3**).  No discovery has been done, and many facts are not yet known.  However, there is no dispute that there was a meeting of the minds as to the essential terms necessary to form a contract to release the loan obligations in order to short sale the Property for $190,000.

Accordingly, defendant BofA's motion for summary judgment must be denied, but plaintiffs' countermotion for partial summary judgment on formation of a valid and enforceable contractual agreement, must be granted.


**B.      Defendant BofA's Actions Demonstrate That They Believed the Second Mortgage Was Owned by Them, or That They Had the Authority and Right to Negotiate its Release.**

Movant claims that the plaintiffs fail to state a claim for breach of contract because the necessary elements were not alleged, and because Old Republic did not agree in writing to the contract.  See Motion to Dismiss, pg. 4-5.

Basic contract principles are required for an enforceable contract to exist: an offer and acceptance, meeting of the minds, and consideration.  Keddie v. Beneficial Insurance, Inc., 94 Nev. 418, 421, 580 P.2d 955, 956 (1978) (Batjer, C.J., concurring). With respect to contract formation, preliminary negotiations do not constitute a binding contract **_unless_** the parties have agreed to all material terms.  May v. Anderson, 119 P. 3d 1254 (Nev. 2005), citing M & D Balloons, Inc. v. Courtaulds, PLC, No. 90-C-834, 1990 WL 186077 (N.D.Ill. Nov.21, 1990).  A valid contract cannot exist when material terms are lacking or are insufficiently certain and definite. Matter of the Estate of Kern, 107 Nev. 988, 991, 823 P.2d 275, 277 (1991); Richards v. Oliver, 162 Cal.App.2d 548, 328 P.2d 544, 552 (1958).  A contract can be formed, however, when the parties have agreed to the material terms, even though the contract's exact language is not finalized until later. May v. Anderson, 119 P. 3d 1254 (Nev. 2005). A court can compel compliance if material terms are certain. Id.  In order to enforce the terms of a contract, the court must be able to ascertain what is

required of the respective parties.  Richards v. Oliver, 162 Cal.App.2d 548, 328 P.2d 544, 552 (1958).

Here, there is no dispute that the complaint properly alleges the necessary elements to demonstrate the existence of a contract and breach of that contract.  See Complaint, pg. 7-8, paras. 44-51.

So, apparently BofA is simply arguing that the cause of action for breach of contract fails because Old Republic Insurance did not agree to the terms.  This is odd, considering the fact that during the time the parties were making offers and counteroffers for short sale of the Property, defendant BofA was making offers and counteroffers to resolve both the first and the second mortgages, as if BofA owned both (See, **Exhibit 1**).  In fact as plaintiffs' counsel is drafting this opposition, it is still not known exactly when the second mortgage was assigned to Old Republic Insurance Company.  Defendant's **Exhibit E**, which was supposed to show that Old Republic Insurance was assigned the second deed of trust in March of 2013, does NOT show that, instead it shows that the second deed of trust was assigned to defendant Nationstar on July 18 (7 days after BofA agreed in writing to the $190,000 sale price and deficiency waiver).

## C.   Agency/Equitable Estoppel

It is unknown if the second mortgage was transferred to Old Republic Insurance during the June and July negotiations.  If so, it is unknown if BofA had the actual authority to negotiate the resolution of the second mortgage with the plaintiffs' agents.  But it is clear that defendant BofA thought it had authority to negotiate it, and acted as if it did, and BofA should be equitably estopped from denying it now.

The doctrine of Equitable Estoppel "operates to prevent the assertion of legal rights that in equity and good conscience should be unavailable because of a party's conduct." Pellegrini v. State, 117 Nev. 860, 34 P.3d 519, 531 (2001).

To bind a another party, an agent must have actual authority, express or implied, or apparent authority.  Dixon v. Thatcher, 103 Nev. 414, 742 P.2d 1029 (Nev. 1987).  Apparent authority is "that authority which a principal holds his agent out as possessing or permits him to exercise or to

10

represent himself as possessing, under such circumstances as to estop the principal from denying

its existence." Id. at 417, 1031.  Citing Myers v. Jones, 99 Nev. 91, 93, 657 P.2d 1163, 1164 (1983).

> Apparent authority is created by the same method as that which creates authority, except that the manifestation of the principal is to the third person rather than to the agent. For apparent authority there is the basic requirement that the principal be responsible for the information which comes to the mind of the third person, similar to the requirement for the creation of authority that the principal be responsible for the information which comes to the agent. Thus, either the principal must intend to cause the third person to believe that the agent is authorized to act for him, or he should realize that his conduct is likely to create such belief. The information received by the third person may come directly from the principal by letter or word of mouth, from authorized statements of the agent, from documents or other indicia of authority given by the principal to the agent, or from third persons who have heard of the agent's authority through authorized or permitted channels of communication.  Rest. 2d Agency § 27.

In the present case it is unknown what the timing of the assignment was or who had authority to do what regarding negotiating the second mortgage.  This is an issue which needs further discovery and information, which is yet another reason to deny defendant's motion to dismiss.  Plaintiffs are entitled to have time in which to find these issues out, and FRCP 56(d) allows for that time.

**D.    The Court Should Allow the Complaint to Be Amended to Add a Cause of Action for Equitable Estoppel.**

Under FRCP 15(a)(2), leave of court is required at this point, but leave should be freely given if justice so requires.

Here, the complaint already mentions and asks for relief for promissory estoppel, but does not name equitable estoppel.  Based on the above law and arguments, plaintiffs ask the court to allow the plaintiffs to file an amended complaint which titles the third cause of action as: *"(Promissory Estoppel/Detrimental Reliance/Equitable Estoppel)"* .

The complaint already alleges the necessary facts within it to support the cause of action.

**E.    Conclusion**

For the above reasons, defendant BofA's motion to dismiss must be treated as a motion for summary judgment.  Under summary judgment standards, the defendant's motion must be denied. There are facutal issues in dispute, and discovery needs to be conducted.

However, regarding plaintiffs' countermotion for partial summary judgment, there is no dispute that the parties had a meeting of the minds regarding all necessary elements to form an

1    agreement to short sell the plaintiffs' home for $190,000.

2            DATED this _9_ day of Jan., 2014.

3                                    HOMEOWNER RELIEF LAWYERS LLC

4

5                                        /s/ Dale K. Kleven
                                    DALE K. KLEVEN, ESQ.
6                                   Nevada Bar No.  007778
                                    5550 Painted Mirage Rd., Suite 320
7                                   Las Vegas, Nevada 89149
                                    Phone: 702-589-7520
8                                   Fax: 702-946-1350
                                    Email: admin@hrlnv.com
9                                   *Attorney for Plaintiffs*

10       **FRCP 56(d) DECLARATION REGARDING ADDITIONAL DISCOVERY**

11           Declarant, DALE K. KLEVEN, ESQ., does declare, assert, and affirm under penalty of

12   perjury, under the laws of the State of Nevada, that:

13   1.    Declarant has personal knowledge of the matters set forth herein.

14   2.    Declarant is the attorney of record for Plaintiffs, in the above captioned Case.

15   3.    Declarant has reviewed the facts, papers, evidence, pleadings, and spoken with many of the

16         parties and/or witnesses and their attorneys.

17   4.    There are many issues still unclear or completely unknown to declarant at this time, and

18         which discovery would likely ferret out.  To wit:

19   5.    Did BofA still own both the first and second mortgages during the June and July 2013

20         negotiations and agreements?

21   6.    When did BofA assign the rights to the second mortgage to Old Republic?

22   7.    When did BofA assign its rights to Nationstar? (If at all).

23   8.    Who is/was the true owner of the second mortgage?

24   9.    Did the true owner of the second mortgage ask BofA to act as its agent to negotiate the short

25         sale?

26   10.   If not, did BofA have the authority and right to agree to negotiate on behalf of Old Republic,

27         or Nationstar and agree to short sale the property for $190,000 and to grant a full deficiency

28         waiver and release for both mortgages?

                                        12

11.     Did BofA act in good faith when it made multiple offers which included a release of the second mortgage, AFTER the second mortgage was allegedly sold or assigned to Nationstar or Old Republic?

12.     Discovery in the form of Interrogatories, Request for Production of Documents, Depositions, and Subpoenas would be able to ascertain the above information.

*I declare under penalty of perjury, under the laws of the State of Nevada (NRS 53.045), that the foregoing is true and correct.*

Executed on this __9_ day of Jan., 2014.

Executed by:   _/s/ Dale K. Kleven_____
                        DALE K. KLEVEN, ESQ.
                        Declarant

13